IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| TIME INSURANCE AGENCY, INC., § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | |
| § | CIV. ACTION NO. 17-CV-969 |
| THE HANOVER INSURANCE COMPANY, § | |
| § | **JURY TRIAL DEMANDED** |
| Defendant. § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Time Insurance Agency, Inc. (the "Agency") hereby files its Original Complaint against The Hanover Insurance Company ("Hanover"), and shows the Court the following:

**I. THE PARTIES**

1. The Agency is a Texas corporation with its principal place of business at 1405 E. Riverside Drive, Austin, Texas 78741. The Agency is an independent insurance agency with offices in Austin and San Antonio, Texas. It provides various types of personal and commercial insurance products and surety bonds.

2. Hanover is a New Hampshire corporation with its principal place of business at 440 Lincoln Street, Worcester, Massachusetts 01653. Hanover is a property and casualty insurance company and part of The Hanover Insurance Group, one of the largest insurance businesses in the United States. Hanover is licensed by the Texas Department of Insurance to write, among other things, fidelity and surety products in Texas. Hanover's agent for service of process is CT Corporation System, 1999 Bryan Street, Suite 900, Dallas Texas 75201-3136.

## II. JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. § 1332(a).  The Agency is a Texas citizen and Hanover is a citizen of New Hampshire and Massachusetts.  In addition, as set forth below, the Agency has been damaged in an amount of at least $300,000 due to Hanover's actions.  Venue is proper in this district because all or a substantial part of the events or omissions giving rise to the Agency's claims occurred in this district.  *See* 28 U.S.C. § 1391(b)(2).

## III. BACKGROUND FACTS

4.      The Agency and Hanover entered into a written "Agency Agreement" (the "Agreement") effective December 9, 2010.  Pursuant to the Agreement, Hanover authorized the Agency to act as its agent to negotiate and service fidelity and surety bonds issued by Hanover.[1]  Pursuant to the Agreement, Hanover recognized that all Hanover business written by the Agency for the Agency's customers was the Agency's exclusive property.

5.      Up until May of 2017, the Agency wrote surety bonds issued by Hanover for a number of its customers, including D.L. Bandy Constructors, Inc. ("D.L. Bandy") and DNT Construction, LLC ("DNT").  On May 25, 2017, one of Hanover's field directors - Michael Kremheller - visited the Agency's office in Austin and abruptly removed the Agency's powers of attorney and seals for the Agency's authorization to write surety bonds for Hanover.  By doing so, Hanover (through Mr. Kremheller's actions) immediately terminated the Agency's authorization to write surety bonds for its customers (including D.L. Bandy and DNT) and thereby terminated the Agreement - without any advance notice (much less notice in writing).

---

[1]     In 2004, Hanover and the Agency entered into a separate "Agency Agreement" governing the Agency's right to provide Hanover's commercial insurance products and services to customers.  That Agreement is not in dispute.

031389-77787/4829-2347-5025.2

2

6. Upon learning about this event, the Agency's President (John Schuler), who was out of town at the time of Mr. Kremheller's actions, spoke with Mr. Kremheller, who confirmed the Agency's cancellation. Mr. Kremheller also explained that the cancellation was predicated upon two events that occurred over a year earlier and that had been resolved (demonstrating the pretextual nature of the termination). In an effort to mitigate the loss of its Hanover customers, Mr. Schuler promptly contacted representatives of D.L. Bandy and DNT. Fortunately, D.L. Bandy elected to remain with the Agency despite Hanover's termination and the Agency placed it with another surety company. DNT, however, did not. Instead, DNT sought out another agent, Insurance and Bonds of Texas (IBTX), to write its surety bonds with Hanover. Apparently, Mr. Kremheller was personal friends with an IBTX representative (Michael Hendrickson) and was seeking to steer DNT's business (to enable IBTX to generate commissions from Hanover's products - which would have been generated by the Agency except for Mr. Kremheller's actions) to Mr. Hendrickson and IBTX.

7. Despite the Agency's efforts to retain DNT as its customer, the Agency lost DNT's substantial surety business because of Hanover's abrupt and unilateral actions as well as Mr. Kremheller's actions in encouraging DNT to do business with IBTX for its bonds. In 2016 alone, the Agency generated over $300,000 in commissions from bonds written by Hanover for DNT. Hanover's actions have deprived the Agency of its ability to generate such commissions in the future.

8. The insurance industry - including the contractual relationships between insurance companies and agents - is highly regulated in Texas. The Texas Legislature has mandated certain procedures to be followed for the cancellation of agency contracts by property and casualty insurers. In particular, Section 4051.353 of the Texas Insurance Code prohibits an

insurer from terminating or suspending a contract with an appointed agent that has been in effect for at least two years unless the insurer provides written notice of the termination or suspension to the agent at least six months before the date of termination or suspension takes effect. *See* Tex. Ins. Code § 4051.353. Hanover has violated this provision by purporting to terminate the Agreement immediately and failing to provide at least six months advance notice of such termination. Hanover has also repudiated the Agreement's terms by failing to provide such notice and causing the Agency to lose one of its significant customers (DNT).

9. In addition, although the Agreement contains various termination provisions (including upon 90 days' notice or immediately for certain reasons), these provisions are inconsistent with Texas law. The Agreement itself provides that such provisions must be interpreted in accordance with state law. In particular, Section 10.6 of the Agreement provides that the Parties' rights and obligations under the Agreement will continue until termination except to the extent that those rights and obligations are inconsistent with applicable state law, in which case the termination provision "will be interpreted as necessary to comply." As such, the Parties specifically contemplated that the Agreement's termination provisions must be interpreted to comply with Texas law (thus mandating the six month notice period).

10. All conditions precedent have occurred or have been performed.

### IV. THE AGENCY'S CLAIMS

A. VIOLATION OF THE TEXAS INSURANCE CODE

11. Pursuant to Tex. Ins. Code § 4051.353, Hanover was required to provide at least six months written notice to the Agency prior to terminating the Agreement. By purporting to terminate the Agreement immediately (upon Hanover's removal of the Agency's powers of attorney and seals and arranging to place DNT's business with a competitive agency (IBTX)),

Hanover has violated the notice requirements under Section 4051.353 of the Texas Insurance Code. As a result of this violation, the Agency has lost the current and future business of DNT, for which it seeks to recover actual damages (pursuant to its rights under § 4051.362 of the Texas Insurance Code).

B. **BREACH OF CONTRACT**

12. The Agreement is a valid and enforceable contract. By failing to comply with the notice provisions under applicable law (as stated herein), Hanover breached and repudiated the Agreement. As a result of this breach, the Agency has incurred actual damages (consisting of the current and future commissions expected to be generated from the lost DNT account). The Agency seeks to recover these damages, together with its attorneys' fees, costs and expenses.

C. **DECLARATORY JUDGMENT**

13. A justiciable controversy exists between the Agency and Hanover concerning the status of the Agreement and the Agency's rights thereunder. To resolve this controversy, the Agency seeks a judicial declaration that (1) the Agreement remains valid and enforceable - at least for the six month period following its attempted termination by Hanover as set forth above, and (2) Hanover's attempted repudiation and immediate termination of the Agreement is null, void and of no legal force and effect (in light of the notice requirements under Texas law). The Agency further seeks to recover its attorneys' fees incurred in connection with this claim for declaratory relief.

## V. PRAYER FOR RELIEF

WHEREFORE, the Agency requests that upon trial hereof, the Agency recover judgment against Hanover for its actual damages, pre and post-judgment interest, attorneys' fees, costs and expenses, the declaratory relief set forth above, and such other and further relief to which it may be justly entitled.

Respectfully submitted,

WALLER LANSDEN DORTCH & DAVIS, LLP
100 Congress Avenue, Suite 1800
Austin, Texas 78701
Telephone:  (512) 685-6400
Telecopier:  (512) 685-6417

By:   */s/ Rick Harrison*
         Rick Harrison
         Texas State Bar No. 09120000
         Rick.Harrison@wallerlaw.com
         Kevin W. Brown
         Texas State Bar No. 24045222
         Kevin.brown@wallerlaw.com