# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| TIME INSURANCE AGENCY, INC. | § | |
| | § | |
| v. | § | A-17-CA-969 LY |
| | § | |
| THE HANOVER INSURANCE CO. | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:  THE HONORABLE LEE YEAKEL
     UNITED STATES DISTRICT JUDGE

Before the Court are Defendant's Amended Motion to Dismiss (Dkt. No. 11); Plaintiff's Response (Dkt. No. 12); and Defendant's Reply (Dkt. No. 14). The District Court referred the above motion to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Rule 1(c) of Appendix C of the Local Court Rules.

## I. BACKGROUND[1]

This case is a breach of contract case between Time Ins. Agency, an independent insurance agency with offices in Austin and San Antonio, and Hanover Insurance Co., a property and casualty insurance company. The Agency and Hanover entered into a written "Agency Agreement" effective December 9, 2010. Pursuant to the Agreement, Hanover appointed the Agency to become Hanover's agent with the authority to "solicit, bind, issue and deliver policies of insurance" for product lines designated in a "Schedule of Authority" attached to the Agreement. The Agreement's "Schedule of Authority" provides that the Agency may act as Hanover's representative in "negotiating, servicing or effecting policies of insurance" issued by Hanover in Texas for lines of business including "fidelity and surety bonds."

---

[1]The facts in this section are taken from Plaintiff's First Amended Complaint (Dkt. No. 8).

The Agency contends that the Agreement provided that all Hanover business written by the Agency for the Agency's customers was the Agency's exclusive property. The Agency relies on Section 6.1 of the Agreement which states: "the ownership, use and control of all expirations, and all records applicable to business you have written with us, including your work product, shall be your exclusive property. . . ." The Agreement additionally provided at Section 6.2 that Hanover "not knowingly take any action that could be construed as moving a policy from [the Agency] to another agency without the written direction of the policyholder."

Between the Effective Date of the Agreement and May of 2017, the Agency wrote surety bonds issued by Hanover for a number of its customers, including D.L. Bandy Constructors, Inc., and DNT Construction. On May 25, 2017, one of Hanover's field directors—Michael Kremheller—visited the Agency's Austin office and removed the Agency's powers of attorney and seals for the Agency's authorization to write surety bonds for Hanover. By doing so, Hanover moved DNT and D.L. Bandy's existing bonds from the Agency to another agency without these customer's written direction. Additionally, Hanover immediately terminated the Agency's authorization to write surety bonds for its customers, effectively terminating the Agreement without any advance notice.

Upon learning about this event, the Agency's President, John Schuler, in an effort to mitigate the loss of its Hanover customers, contacted representatives of D.L. Bandy and DNT. D.L. Bandy elected to remain with the Agency and the Agency placed it with another company writing surety products. DNT, however, designated another agent, Insurance and Bonds of Texas (IBTX), to write its surety bonds with Hanover. The Agency lost DNT's surety business, which the Agency alleges is a direct result of Hanover's actions in terminating the Agreement. The Agency alleges losses in excess of $300,000 from the loss of this business.

In this suit, the Agency claims that Hanover: (1) violated section 4051.353 of the Texas Insurance Code by failing to provide at least six months written notice to the Agency before terminating the Agreement; and (2) breached the Agreement by failing to comply with the notice provision and by moving D.L. Bandy and DNT's surety bonds to another insurance agency without the written direction of those customers. The Agency requests damages in the form of lost profits along with the loss of good will, attorney's fees costs, and expenses.

Hanover moves to dismiss the suit, asserting that: (1) section 4051.353 of the Texas Insurance Code does not apply to surety bonds; (2) there is no breach of contract because the notice provision of section 4051.353 of the Texas Insurance Code does not apply; (3) there is no breach of contract because Hanover did not remove an insurance policy from the Agency; and (4) the Agency cannot recover speculative damages.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted), *cert. denied*, 552 U.S. 1182 (2008).

While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Supreme Court has explained that a court need not accept as true conclusory allegations

or allegations stating a legal conclusion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("mere conclusions[ ] are not entitled to the assumption of truth."). A complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Id.*

### III. ANALYSIS

**A.     Section 4051.353 of the Texas Insurance Code**

The Agency argues that by failing to provide proper notice of termination, Hanover violated the Texas Insurance Code, which states in relevant part:

> (a) An insurer may not terminate or suspend a contract with an appointed agent that has been in effect for at least two years unless the insurer provides written notice of the termination or suspension to the agent at least six months before the date the termination or suspension takes effect.
>
> (b) A contract that replaces or revises a contract that has been in effect for at least two years is subject to this subchapter if there has not been a material change in the ownership of the agency.

TEX. INS. CODE § 4051.353. Hanover argues that this provision, which refers specifically to "[a]n insurer" does not apply to a "surety" like Hanover. In support, Hanover relies upon a different section of the Texas Insurance Code which states:

> (a) This subchapter and Subchapters B-E, G, and I apply to each agent of an insurer authorized to engage in the business of property and casualty insurance in this state.
>
> (b) This subchapter and Subchapters B-E, G, and I apply to each person who performs the acts of an agent, as described by Section 4001.051, whether through an oral, written, electronic, or other form of communication, by soliciting, negotiating, procuring, or collecting a premium on an insurance contract offered by any kind of

insurer authorized to engage in the business of property and casualty insurance in this state, including:

(1) a fidelity or surety company . . . .

TEX. INS. CODE § 4051.001. Hanover contends that because § 4051.353 is part of "subchapter H," § 4051.001 does not apply to that section and thus § 4051.353 only applies to "insurers" and not "sureties." Hanover argues that the Texas Supreme Court, in recognizing the difference between insurers and sureties, has ruled that unless a section of the Insurance Code specifically includes sureties, the section does not apply to sureties. *See Dallas Fire Ins. Co. v. Tex. Contractors Sur. & Cas. Agency*, 159 S.W.3d 895, 897 (Tex. 2004); *Great American Insurance Co. v. North Austin Utility District No. 1*, 908 S.W.2d 415, 424 (Tex. 1995). Hanover additionally argues that nothing in the legislative history suggests that the Legislature intended § 4051.353 to apply to performance bonds or sureties.

The Agency responds that the preamble to Subchapter H of Chapter 4051 (§ 4051.351), entitled, "Applicability of Subchapter" establishes that section 4051.353 applies here. Section 4051.351 states:

> (a) Except as provided by Subsection (b), this subchapter applies to each contract between an agent and *an insurer engaged in the business of property and casualty insurance in this state*.

TEX. INS. CODE § 4051.351(a) (emphasis added). The Agency argues that regardless of the product at issue, the Agreement is subject to the notice provision because Hanover is an "insurer engaged in the business of property and casualty insurance in this state." The Agency further argues that Hanover's own form agreement, and specifically the Agreement at issue here, defines surety bonds as a type of insurance product. Specifically, the Agreement's "Schedule of Authority" provides that

the Agency may act as Hanover's representative in "negotiating, servicing or effecting policies of insurance" issued by Hanover in Texas for "lines of business" including "fidelity and surety bonds." (Dkt. No 1-1). The Agency asserts that Hanover's primary argument and related authorities rest upon a distinction between insurers and surety companies that is immaterial for purposes of § 4051.353, and therefore are not determinative of this case. The Agency argues that the statute's reach plainly covers any "insurer engaged in the business of property and casualty insurance" in Texas, including Hanover.

When construing a statute, the court's primary objective is to determine the Legislature's intent which, when possible, the court should discern from the plain meaning of the words chosen. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). If a statute is clear and unambiguous, the court applies the common meaning of the words of the statute, without resort to rules of construction or extrinsic aids. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865–66 (Tex. 1999). "It is a rule of statutory construction that every word of a statute must be presumed to have been used for a purpose. Likewise, we believe every word excluded from a statute must also be presumed to have been excluded for a purpose." *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981) (citation omitted). This means that "[w]hen the Legislature employs a term in one section of a statute and excludes it in another section, the term should not be implied where excluded." *Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995).

Thus, the Court must decide whether Hanover qualifies as an "insurer engaged in the business of property and casualty insurance" for the purpose of applying § 4051.353. First the Court looks at the statutory language. Section 4051.001(b)(1) of the Texas Insurance Code states that, for purposes of the listed subchapters of that portion of the Insurance Code, an "insurer authorized to engage in

6

the business of property and casualty insurance in this state" includes "a fidelity or surety company." However, § 4051.001 does not apply to Subchapter H, which is the subchapter that includes § 4051.353, the termination provision on which the Agency brings suit. Complicating matters, the first section of Subchapter H, entitled "Applicability of Subchapter" indicates that "this subchapter applies to each contract between an agent and an insurer engaged in the business of property and casualty insurance in this state." TEX. INS. CODE § 4051.351(a). This section does not otherwise limit this phrase. By its plain language, therefore, Subchapter H applies to "each contract between an insurer engaged in the business of property and casualty insurance in this state." This would suggest that it applies to the contract between the Agency and Hanover, as there is no dispute that Hanover is "an insurer" and is engaged in the business of property and casualty insurance in Texas.

Hanover argues that this is not the end of the analysis. It points to *Great American Insurance Co. v. North Austin Util. Dist. No. 1*, 908 S.W.2d 415, 424 (Tex. 1995), and specifically to the statement that "according to the Texas Supreme Court, when as here, an Insurance Code provision omits sureties, the statute does not apply to sureties." (Dkt. No. 11 at 4). In *Great American*, the Texas Supreme Court held that article 21.21 of the Insurance Code, providing a private cause of action for unfair or deceptive acts or practices in the business of insurance, did not apply to sureties. *See* TEX. INS. CODE ART. 21.21, § 16(A). The court found that the Texas Legislature did not intend to include suretyship as the "business of insurance" for all purposes under the version of the Insurance Code then in force, and stated:

> we cannot conclude that the Legislature intended to include suretyship in the definition of the business of insurance under article 21.21. Absent a clear legislative directive, we conclude that suretyship, as historically understood in the insurance and suretyship fields, does not constitute the business of insurance under article 21.21.

7

*Id.* at 424. Several years later, the Texas Supreme Court held that a contract dispute between an agent and a surety did not qualify as the "business of insurance" under article 21.21 and that "the business of insurance" means different things for different sections of the Insurance Code. *Dallas Fire Ins. Co.*, 159 S.W.3d at 896. The court stated, "[f]or example, at all times applicable here, suretyship was expressly included in the 'doing an insurance business' in former article 1.14-1, but expressly excluded in article 21.55, section 5(a)(4)." *Id.* Relying on these cases, Hanover argues that contracts between agents and surety companies have been excluded from the reach of § 4051.353, and therefore it may not be sued under that section.

The Court disagrees that the applicable statute "omits" sureties from its reach, as the sections at issue in the two cases just discussed did. In this case the Legislature stated that the applicable subchapter, Subchapter H, applies to "each contract between an *agent* and an *insurer engaged in the business of property and casualty insurance* in this state." Though the language of the first subchapter (§ 4051.001) makes certain sections specifically applicable to surety companies, it does not purport to *exclude* surety companies from the reach of the remaining unlisted subchapters. To have done this, the section would had to have included language to the effect that "Subchapters D, F, and H do not apply to a fidelity or surety company." The absence of such language means that the Court must look to the language of those subchapters—in this case, Subchapter H—to determine the types of insurance entities to which it applies. Here, that question is answered unequivocally by the first section of Subchapter H, titled "Applicability of Subchapter," which as noted, states that it applies to "each contract between an agent and an insurer engaged in the business of property and casualty insurance in this state." TEX. INS. CODE § 4051.351(a). Because there is no dispute that Hanover also provides commercial insurance products in Texas, Hanover is undeniably "an insurer

8

engaged in the business of property and casualty insurance in this state." No one disputes that the Agency is an "agent." Accordingly, this cause of action states a valid claim.

**B.      Breach of Contract Claim**

The Agency asserts that Hanover breached the Agreement by:

> (1) failing to comply with the notice provision under applicable law (as stated herein) and (2) knowingly taking actions that could be construed as moving the existing bonds of D.L. Bandy and DNT from the Agency to another agency without the written direction of these customers.

(Dkt. No. 8 at 6). Hanover argues that the Agency cannot bring a breach of contract claim for its decision to remove the Agency's authority to issue surety bonds because: (1) the breach of contract claim is duplicative of its Insurance Code claim; and (2) as a surety company it did not remove an insurance policy, but a surety bond. The Agency responds it has brought independently viable claims for breach of the Agreement.

With regard to the argument that the breach of contract claim is duplicative of the breach of Insurance Code claim, this argument fails. Section 10 of the Agreement outlines the methods of terminating the Agreement to be: (a) by mutual agreement; (b) after a period of at least 90 days advance written notice; or (c) immediately for certain identified reasons. (Dkt. No. 8 at 14). The Agency asserts that none of those conditions were met, and thus the termination violated the Agreement. The Agency separately asserts that in terminating its agency, Hanover also violated the termination notice provision of the Texas Insurance Code, which contains separate requirements. The Court agrees that these are two independent claims.

As to Hanover's second argument, that it did not violate the Agreement because it only prohibits the removal of *insurance policies* and Hanover removed the Agency's authority to issue

9

surety bonds, the Court finds it is without merit. Section 6.2 of the Agreement, upon which Hanover relies, states that, "Except as provided in this subsection, we shall not knowingly take any action that could be construed as moving a policy from your agency to another agency without the written direction of the policyholder." (Dkt No. 8 at 13). The Agreement only covers the sale of surety products. The Agreement also states in its Schedule of Authority: "As an Agent for the Company, you may act as a representative of the Company in negotiating, servicing or effecting policies of insurance issued in the name of the Company for the following lines of business: Fidelity and Surety Bonds." (Dkt No. 8 at 17).

In construing a contract, the court examines the entire document and considers each part with every other part so that the effect and meaning of one part on any other part may be determined. *Steeger v. Beard Drilling, Inc.*, 371 S.W.2d 684, 688 (Tex. 1963). The Court presumes that the parties to a contract intend every clause to have some effect. *Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 332 (Tex. 1983). The Schedule of Authority explicitly describes surety bonds as "policies of insurance." Therefore, any reference to "policy" and "policyholder" in Section 6.2 also refers to surety bonds. Moreover, as the Agreement only applies to fidelity and surety bonds, Section 6.2 would have no meaning if it did not also apply to those instruments. The Agency has stated a breach of contract claim under Section 6.2 of the Agreement.

**C.     Damages**

Lastly, Hanover asserts that the Agency's claims must be dismissed because the damages it asserts are purely speculative. The Agency claims that it was damaged in the loss of goodwill and by lost profits. It identifies its damages as "the current and future commissions expected to be generated from the lost DNT account." (Dkt. No. 8 at 6). At the pleadings stage, if damages are a

10

required element to a plaintiff's claim, the plaintiff must plead only that he has incurred damages. FED. R. CIV. P. 8(A)(3). Lost profits may be recovered as damages under Texas law. *See White v. Sw. Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex. 1983). Additionally, damages may be recovered for the loss of good will under Texas law. *Tex. & P. Ry. Co. v. Mercer*, 127 Tex. 220, 90 S.W.2d 557, 560 (1936); *see Marsh USA, Inc. v. Cook*, 354 S.W.3d 764, 777 (Tex. 2011).

In its pleading, the Agency asserted that in 2016 it generated over $300,000 in commissions from bonds written by Hanover for DNT. (Dkt. No. 8 at 4). "Contrasting revenue from a time period immediately before the period at issue is an established method of proving revenue for a lost profit damages calculation." *See Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276, 279 (Tex.1994) ("It is permissible to show the amount of business done by the plaintiff in a corresponding period of time not too remote, and the business during the time for which recovery is sought." ). The Agency's pleading regarding its damages is more than adequate to state a claim and survive a Rule 12(b)(6) motion.

### III. RECOMMENDATION

For the reasons set forth above, the Court **RECOMMENDS** that the district judge **DENY** Defendant's Amended Motion to Dismiss (Dkt. No. 11). The Clerk is directed to **REMOVE** this case from the undersigned's docket.

### IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 15th day of August, 2018.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE